J-A01033-21

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| RAMON RONALDO NEGRON-WALTHER, | : | |
| Appellee | : | No. 568 EDA 2020 |

Appeal from the Order Entered January 21, 2020
in the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0001470-2019

BEFORE:    BENDER, P.J.E., OLSON, J. and STRASSBURGER, J.*

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 30, 2021**

The Commonwealth appeals from the trial court's January 21, 2020 order granting the motion to suppress filed by Appellee, Ramon Ronaldo Negron-Walther.   The Commonwealth contends the court erred when it suppressed evidence resulting from a vehicle pursuit which led to Negron-Walther's arrest and being charged with driving offenses.  Upon review, we affirm on the basis set forth in the trial court's opinion.

The trial court set forth a full recitation of the facts of this case in its opinion.  ***See*** Trial Court Opinion (TCO), 1/21/20, at 1–7.  Briefly, on March 9, 2019, Negron-Walther was charged with driving under the influence of alcohol (DUI) (general impairment), 75 Pa.C.S. § 3802(a)(1); DUI (highest rate of alcohol), 75 Pa.C.S. § 3802(c); careless driving, 75 Pa.C.S. § 3714(a);

_____
*Retired Senior Judge assigned to the Superior Court.

and failure to stop at a red signal, 75 Pa.C.S. § 3112(a)(3)(i). Prior to trial, he filed a motion to suppress the evidence obtained during what he argued was an illegal arrest. On October 21, 2019, the court conducted a hearing on Negron-Walther's motion, at which the Commonwealth offered the testimony of Officer Kevin Lindsay and a DVD recording of Officer Lindsay's dashboard camera.[1]

On January 21, 2020, the court issued an order granting the suppression motion. The trial court concluded Officer Lindsay lacked probable cause to stop Negron-Walther's car in his primary jurisdiction of Bethlehem Township and thus, was not authorized to pursue Negron-Walther into the neighboring jurisdiction of Palmer Township. Accordingly, the trial court ordered "all evidence resulting from Officer Lindsay's pursuit into Palmer Township and eventual arrest of [Negron-Walther] shall be suppressed." TCO at 1.

The Commonwealth filed a timely notice of appeal, certifying under Pa.R.A.P. 311(d) that the court's order substantially handicapped the prosecution of its case. The Commonwealth timely filed its Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed a statement pursuant to Pa.R.A.P. 1925(a), relying on its statement of reasons set forth in its January 21, 2020 order.

Herein, the Commonwealth states two issues for our review:

---

[1] On November 25, 2019, the parties agreed to supplement the suppression record with a recording of the "radio run" from the time of the incident. **See** TCO at 2.

A. Did the suppression court err in finding there was not probable cause to stop [Negron-Walther]'s vehicle based on [Negron-Walther]'s actions in Bethlehem Township, Pennsylvania?

B. Did the suppression court err in finding that the police officer was not permitted to pursue [Negron-Walther] into a neighboring jurisdiction?

Commonwealth's Brief at 4 (unnecessary capitalization and suggested answers omitted).

After careful consideration of the record, the parties' briefs, and the well-reasoned opinion by the Honorable Craig A. Dally, we affirm on the basis set forth in Judge Dally's opinion. *See* TCO at 8–10 (concluding that Officer Lindsay lacked probable cause to believe the vehicle he observed in the two dashboard camera clips was the same vehicle due to the officer's very brief observation and quick loss of sight of the vehicle, the numerous opportunities for the vehicle to turn at an intersection, the distance and time between the clips, and the inconsistencies regarding how and when the officer identified the vehicle from the two clips as the same Volkswagen Jetta); *id.* at 10–14 (concluding the record failed to establish that Officer Lindsay had probable cause to stop Negron-Walther's vehicle for a section 3361 violation in his primary jurisdiction of Bethlehem Township where there was no evidence of conditions indicating "inclement weather, pedestrian crosswalks, heavy traffic, or other conditions then existing on the roadway within Bethlehem Township which rendered [Negron-Walther's] speed unreasonable"); *id.* at 14–15 (concluding the record failed to establish that Officer Lindsay had probable

- 3 -

cause to stop Negron-Walther's vehicle for a section 3714 violation in his primary jurisdiction of Bethlehem Township where there was no evidence Negron-Walther's vehicle "crossed a yellow line or a fog line in [passing another vehicle], that he came close to striking another vehicle, or that he otherwise evidenced a disregard for the safety of other motorists or property"); *id.* at 16–18 (concluding Officer Lindsay was not permitted to pursue Negron-Walther into extraterritorial Palmer Township under subsection 8953(a)(2) of the Municipal Police Jurisdiction Act because he "lacked probable cause to believe that violations of [s]ections 3361 and/or 3714 occurred within his primary jurisdiction" of Bethlehem Township).

Order affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/2021

# IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,    :

       : 

v.        :    **C-48-CR-1470-2019**

       : 

RAMON RONALDO NEGRON-WALTHER,    : 

**Defendant.**        :

## ORDER OF COURT

**AND NOW**, this _21st_ day of January, 2020, upon consideration of Defendant's Omnibus Pretrial Motion in the nature of a Motion to Suppress, as well as the legal memoranda submitted on behalf of the Defendant and the Commonwealth, it is hereby **ORDERED** and **DIRECTED** that Defendant's Omnibus Pretrial Motion is **GRANTED**, as set forth more fully in the following Statement of Reasons.

It is further **ORDERED** and **DIRECTED** that all evidence resulting from Officer Lindsay's pursuit into Palmer Township and eventual arrest of Defendant shall be suppressed.

## STATEMENT OF REASONS

### Factual and Procedural Background

The matter now before the Court is the Omnibus Pretrial Motion in the nature of a Motion to Suppress filed on behalf of Defendant, Ramon Negron-Walther, wherein Defendant challenges the legality of his arrest on March 9, 2019 and seeks to suppress any evidence obtained as a result thereof. Defendant's arrest resulted in the following charges: **(1)** Driving Under the Influence of Alcohol, Highest Rate (BAC 0.16 +), 2nd Offense (M1), 75 Pa.C.S.A. § 3802(c); **(2)** Driving Under the Influence of Alcohol, General Impairment, 2nd Offense (M), 75

Pa.C.S.A. § 3802(a)(1); **(3)** Careless Driving (S), 75 Pa.C.S.A. § 3714(a); and **(4)** Failure to Stop at Red Signal (S), 75 Pa.C.S.A. § 3112(a)(3)(i).

Following the filing of the instant Motion on August 1, 2019, a hearing was held before the undersigned on October 21, 2019, at which the Commonwealth offered, *inter alia*, the testimony of Officer Kevin Lindsay. By Order of Court dated October 22, 2019, the above-captioned matter was assigned to the undersigned for all pre-trial, trial, and post-trial proceedings. Upon receipt of the transcript of the October 21, 2019 suppression hearing, briefs were submitted on behalf of the parties. Additionally, on November 25, 2019, the Court was advised that counsel for Defendant and the Commonwealth agreed by stipulation to supplement the suppression record with the admission of Defense Exhibit 1, a recording of the radio run from the time of the incident on March 9, 2019, a copy of which was subsequently provided to the Court.

At the suppression hearing, Officer Lindsay testified that he has been a police officer for seven (7) years, and is currently employed as a patrol officer for the Bethlehem Township Police Department, where he has been so employed for approximately six (6) years. (Suppression Hearing Transcript, N.T. 10/21/2019, at 5). On March 9, 2019, at approximately 12:30 A.M., Officer Lindsay was on-duty monitoring traffic in a marked police vehicle in an area near Freemansburg Avenue between the Main Street extension and Willow Park Road in Bethlehem Township, facing the eastbound direction of travel on Freemansburg Avenue. (N.T., at 6-7, 13). Officer Lindsay indicated that he frequently monitors traffic in that area and knew that the posted speed limit for that section of the road was thirty-five (35) miles per hour. (N.T., at 7-8). Officer Lindsay also noted that the area is usually heavily trafficked, but that there was unusually low traffic on that occasion. (N.T., at 7).

2

Shortly after 12:30 A.M., Officer Lindsay observed a vehicle drive past his location going eastbound on Freemansburg Avenue, traveling at a very high rate of speed. (N.T., at 7). Officer Lindsay testified that he could tell that the vehicle was a black, four-door sedan, but that he was unable to identify the driver or determine if there were any passengers in the vehicle due to his viewing angle and the speed of the vehicle. (N.T., at 9). However, Officer Lindsay testified that he recognized the taillights of the vehicle, and on this basis believed that the vehicle was a Volkswagen Jetta, which is also the make and model of Officer Lindsay's personal vehicle. (N.T., at 9). Officer Lindsay was not speed-timing at the time that the vehicle passed him, but stated that it was going fast enough that he decided to pull out and attempt to stop the vehicle. (N.T., at 8). Officer Lindsay then radioed to other officers regarding the vehicle that passed him at a high rate of speed, identifying it only as a black sedan. (N.T., at 9-10); Defense Exhibit 1.

Officer Lindsay then activated his lights and attempted to catch up to the vehicle, but he quickly lost sight of it as it traveled around a right-hand, uphill curve on Freemansburg Avenue. (N.T., at 10, 14, 42). Approaching sixty (60) miles per hour in the thirty-five (35) miles per hour zone in pursuit of the vehicle, Officer Lindsay testified that he believed other officers in the area would have a better chance of stopping the vehicle and that he did not think it was reasonable to continue to travel at that speed in order to catch the vehicle, so he deactivated his lights and slowed down, but continued to drive eastbound on Freemansburg Avenue, and continued to search for the vehicle. (N.T., at 9-10, 15, 34, 40-41, 43-44).

The Commonwealth also submitted into evidence dash camera footage from Officer Lindsay's patrol vehicle, marked as Commonwealth Exhibit 1. (N.T., at 10-12). Contained within Commonwealth Exhibit 1 are two separate clips from Officer Lindsay's dash camera.

3

(N.T., at 12). The first clip depicts Officer Lindsay's observation of a dark sedan passing by his location at a high rate of speed approximately at the time marked 31:41, corresponding to 12:31:41 A.M. ("First Clip"). (N.T., at 12-13). Officer Lindsay indicated that he activated his lights and pulled out to attempt to stop the vehicle, but soon lost sight of the vehicle. (N.T., at 10, 14). Officer Lindsay then slowed down and deactivated his lights, and the First Clip ends at 32:44. (N.T., at 14).

Officer Lindsay testified that the dash camera resumed recording at 35:12 ("Second Clip"). (N.T., at 15-16). Officer Lindsay indicated that the beginning of the Second Clip depicts him continuing to travel eastbound on Freemansburg Avenue, near its junction with Route 33, approaching Southmont Way, approximately one mile away from the events of the First Clip, but still within his primary jurisdiction of Bethlehem Township. (N.T., at 16, 19, 32-33). During the approximately 2.5 minutes between the end of the First Clip at 32:44 and the beginning of the Second Clip at 35:12, Officer Lindsay testified on cross-examination that as he continued traveling eastbound on Freemansburg avenue, he observed tail lights in the distance when he was passing 9th Street, and believed they belonged to the same vehicle in the First Clip, but did not know whether it was the same vehicle. (N.T., at 21, 33, 35-36, 40-41). Officer Lindsay indicated that he got closer to the tail lights and was able to observe the vehicle as Officer Lindsay passed St. Luke's Hospital, approaching Southmont Way, and at this point, he believed it was the same vehicle seen in the First Clip, based on the light traffic pattern and his observation that color of the car and the tail lights appeared the same. (N.T., at 17-19, 21, 35).

Officer Lindsay also testified that as he approached the vehicle whose tail lights were observed at 9th Street, but before the beginning of the Second Clip at 35:12, he saw the vehicle stopped at a traffic light near St. Luke's Hospital. (N.T., at 21, 39). After the traffic light turned

4

green, and at at least one subsequent traffic light, Officer Lindsay indicated that he saw the vehicle "jack rabbit," meaning that it accelerated hard when the light turned green, and then came to a stop at the next red light, which he described as "erratic driving behavior." (N.T., at 21-22, 38-40). On cross-examination, Officer Lindsay testified that he did not observe the vehicle proceed through these red lights, did not hear any tires squealing, and did not observe the vehicle fishtailing. (N.T., at 39-40).

The beginning of the Second Clip depicts Officer Lindsay following the vehicle approaching Southmont way and observing it pass another vehicle on Freemansburg Avenue. (N.T., at 17, 22, 33). For a brief period, the vehicle that was passed was in between Officer Lindsay's cruiser and the vehicle he was following. (N.T., at 17, 33-34). When Officer Lindsay passed Southmont Way, he activated his lights and was attempting to initiate a traffic stop on the vehicle he was pursuing. (N.T., at 34). Officer Lindsay and the footage from the Second Clip indicated that he was traveling over sixty (60) miles per hour and approaching seventy (70) in order to catch the vehicle, and was slowly closing in on it. (N.T., at 23-24). Officer Lindsay testified that the posted speed limit on this stretch of Freemansburg Avenue was forty (40) miles per hour. (N.T., at 23).

At approximately 36:03 in the Second Clip, while still pursuing the vehicle, Officer Lindsay passes a "Welcome to Palmer Township" sign, indicating that he traveled outside of his primary jurisdiction into Palmer Township, Pennsylvania. (N.T., at 23, 25). Officer Lindsay followed the vehicle as it turned left onto Stone's Crossing, pursuing the vehicle at approximately sixty-seven (67) miles per hour through a residential neighborhood, though at this point, he had deactivated his emergency lights. (N.T., at 25). Officer Lindsay then observed the vehicle turn left onto William Penn Highway, running through a steady red light. (N.T., at 26).

5

Officer Lindsay followed the vehicle as it pulled into a residential driveway and came to a stop. (N.T., at 26).

Officer Lindsay testified that following the events depicted in the Second Clip, his interactions with the driver led him to believe that the driver was operating the motor vehicle while impaired. (N.T., at 26). Officer Lindsay administered field sobriety tests, and ultimately transported the driver to the Northampton County DUI processing center to submit to a blood draw. (N.T., at 27). Officer Lindsay identified the Defendant as the driver of the vehicle he ultimately stopped, and indicated that he was "absolutely certain" that the vehicle stopped in the driveway was the same as the vehicle from the First Clip. (N.T., at 27). Officer Lindsay testified that prior to exiting his primary jurisdiction, he intended to stop Defendant based on the "careless driving" and "driving vehicles at safe speed" provisions of the Motor Vehicle Code. (N.T., at 23-24).

On cross-examination, Officer Lindsay acknowledged that despite only observing the vehicle from the First Clip for approximately 1.5 seconds, he was absolutely certain that this was the same Volkswagen Jetta that he ultimately stopped in Palmer Township. (N.T., at 29-30). He further testified that after he had lost sight of the vehicle from the First Clip almost immediately, but before he encountered the vehicle in the Second Clip, he traveled past at least ten (10) right turns that the vehicle from the First Clip could have made. (N.T., at 41-42). He added that as he continued eastbound on Freemansburg Avenue looking for the vehicle from the First Clip, he did not go down or even look down any of these ten (10) streets. (N.T., at 41-42). Further cross-examination revealed that although Officer Lindsay testified that he instantly recognized the vehicle from the First Clip as a Volkswagen Jetta, his contemporaneously created incident report did not identify any vehicle as a Volkswagen Jetta until he had already stopped Defendant's

6

vehicle in the driveway in Palmer Township. (N.T., at 30). The report, as well as the radio run from that evening, only described a dark-colored sedan up until that point. (N.T., at 30); Defense Exhibit 1.

## Standard of Law

Whereas a vehicle stop based on suspicion of driving under the influence or other investigatable offense may be justified by the lesser standard of reasonable suspicion articulated in Terry v. Ohio, 392 U.S. 1 (1968), "a vehicle stop based solely on offenses not 'investigatable' cannot be justified by a mere reasonable suspicion, because the purposes of a Terry stop do not exist—maintaining the *status quo* while investigating is inapplicable where there is nothing further to investigate. An officer must have probable cause to make a constitutional vehicle stop for such offenses." Com. v. Chase, 960 A.2d 108, 11 (Pa. 2008) (italics in original). In such an instance, it is incumbent upon the officer to "articulate specific facts possessed by him [or her], at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the [Motor Vehicle] Code." Com. v. Feczko, 10 A.3d 1285, 1291 (Pa. Super. 2010) (citations omitted).

Probable cause exists "where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." Com. v. Hernandez, 935 A.2d 1275, 1284 (Pa. 2007). Determination of the existence of probable cause "calls for a totality of circumstances analysis" and "does not involve certainties, but rather factual and practical considerations of everyday life on which reasonable and prudent [persons] act." Com. v. Salter, 121 A.3d 987, 995 (Pa. Super. 2015) (citations omitted).

7

## Discussion

The primary issues[1] raised by Defendant's Motion to Suppress are (1) whether Officer Lindsay had probable cause to stop Defendant's vehicle based on suspected violations of 75 Pa.C.S.A. § 3714 (Careless Driving) and/or 75 Pa.C.S.A. § 3361 (Driving Vehicle at Safe Speed), and; (2) whether Officer Lindsay's conduct in pursuing Defendant's vehicle out of his primary jurisdiction constituted "hot" and "fresh" pursuit within the meaning of Section 8953 of the Municipal Police Jurisdiction Act ("MPJA"), 42 Pa.C.S.A. § 8953(a)(2).

Subsection (a)(2) of Section 8953 provides that any duly employed municipal police officer within the Commonwealth, but beyond the territorial limits of his or her primary jurisdiction, may lawfully perform police functions "[w]here the officer is in hot pursuit of any person for any offense which was committed, or which he [or she] has probable cause to believe was committed, within his [or her] primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense." 42 Pa.C.S.A. § 8953(a)(2). Accordingly, at least probable cause to believe that an offense was committed within an officer's primary jurisdiction is required in order to trigger Section 8953's authorization of "hot" and "fresh" pursuit beyond the territorial limits of that jurisdiction. See Com. v. McCandless, 648 A.2d 309 (Pa. 1994).

As a preliminary matter, on cross examination, as well as in his supportive brief, Defendant calls into question the credibility of Officer Lindsay's identification of the vehicles

---

[1] As a threshold matter, the Commonwealth argues that Defendant's written Motion falls short of the specificity requirements set forth in Rule 581(D), and that when read alone, the Motion fails to put the Commonwealth on notice of precisely what is sought to be suppressed. Commonwealth's Brief in Opposition to Defendant's Motion to Suppress Evidence, at unnumbered p.7. While the Commonwealth acknowledges that defense counsel supplemented the record at the Suppression Hearing and narrowly defined the issues raised by Defendant's Motion, the Commonwealth contends that any issue outside the scope of the two issues raised at the Suppression Hearing are waived. Id.

8

from the First Clip and the Second Clip as being the same vehicle. (N.T., at 29-30, 31-32, 35-39); Defendant's Brief in Support of Omnibus Pretrial Motion, at unnumbered pp.2-6. The Commonwealth contends that the evidence of the events depicted in the Second Clip alone provide a legally sufficient basis for Officer Lindsay to stop that vehicle, and that the Court need not reach the potentially difficult question of whether the vehicles from the First and Second Clips were the same vehicle. Commonwealth's Brief in Opposition to Defendant's Motion to Suppress Evidence, at unnumbered p.12. However, the Commonwealth also argues that if the Court finds that Officer Lindsay had probable cause to believe that the vehicles from the two clips were the same vehicle, he would have had a legal basis to stop the vehicle as soon as he believed he saw that vehicle again at the beginning of the Second Clip, at 12:35:12 A.M. Id., at unnumbered p.13.

In light of the Court's duty to examine the totality of the circumstances to determine whether probable cause existed, we are constrained to address this issue. Given Officer Lindsay's very brief opportunity to observe the vehicle from the First Clip, his nearly immediate and complete loss of sight of that vehicle, the numerous opportunities for that vehicle to have taken a right turn off of Freemansburg Avenue, the distance travelled and time elapsed between the events depicted in the First and the Second Clips, and the inconsistencies regarding precisely how and when Officer Lindsay identified the vehicle from both video clips as being the same vehicle, namely a Volkswagen Jetta, we conclude that Officer Lindsay did not possess probable cause to believe that the vehicle from the First Clip was the same observed in the Second Clip. Thus, the legality of Officer Lindsay's pursuit of Defendant's vehicle beyond the boundaries Bethlehem Township depends on whether the evidence *other than* the First Clip supports Officer

9

Lindsay's probable cause determination that a violation of the Motor Vehicle Code occurred within his primary jurisdiction.

Officer Lindsay's stated bases for pursuing a vehicle stop of Defendant's vehicle were suspected violations of 75 Pa.C.S.A. § 3361 (Driving Vehicle at Safe Speed) and 75 Pa.C.S.A. § 3714 (Careless Driving).

### 1. 75 Pa.C.S.A. § 3361 (Driving Vehicle at Safe Speed)

Section 3361 provides the following:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

75 Pa.C.S.A. § 3361.

In Weems v. Com., Dept. of Transp., Bureau of Licensing, 990 A.2d 1208 (Pa. Cmwlth. 2010), the Commonwealth Court addressed the issue of probable cause under Section 3361 in conjunction with Section 8953 of the MPJA, reaching the heart of the matter presently before this Court. The sole issue before the court in Weems was "whether [the officer] possessed the statutory authority to effect an arrest of Weems for DUI in the neighboring jurisdiction," based on a suspected violation of Section 3361 within the officer's primary jurisdiction. Weems, 990 A.2d at 1212-13. The Weems court relied on the following passage from Com v. Heberling in reaching its conclusion:

> The second sentence of section 3361 begins with the phrase "*consistent with the foregoing*" and sets forth several specific examples of conditions and hazards that further define when the general conduct—unreasonable or imprudent speed—constitutes a violation. These situations include, but are not limited to, approaching a hill crest and approaching an intersection. These specifically enumerated situations are not the

exclusive or sole situations that, together with inappropriate speed, might constitute violations, because there is a catchall category, i.e., "when special hazards exist with respect to pedestrians *or* other traffic *or* by reason of weather or highway conditions."

**There is no question that speeding alone does not constitute a violation of this section. There must be proof of speed that is unreasonable or imprudent under the circumstances (of which there must also be proof), which are the "conditions" and "actual and potential hazards then existing" of the roadway.** These circumstances may include not only the amount of traffic, pedestrian travel and weather conditions, but also the nature of the roadway itself (e.g., whether four-lane, interstate, or rural; flat and wide, or narrow and winding over hilly terrain; smooth-surfaced, or full of potholes; clear, or under construction with abrupt lane shifts.) It is these circumstances under which one's speed may be found sufficiently unreasonable and imprudent to constitute a violation of section 3361, even if the driver has adhered to the posted speed limit.

\* \* \*

"Approaching a hill crest" and "approaching ... an intersection" are "conditions" specifically enumerated in the statute that require a driver to proceed at a safe and appropriate speed. When appellant drove at an excessive speed under these conditions, she violated section 3361.

Weems, *supra*, at 1214 (quoting Com. v. Heberling, 678 A.2d 794, 795-97 (Pa. Super. 1996)) (bold emphasis added).

The record before the Weems court included the arresting officer's testimony that the section of the road where the offense was alleged to have occurred was a high pedestrian area with no sidewalks, that the defendant was approaching a hillcrest and an intersection, that the officer estimated that the defendant was traveling at twice the legal speed limit and that the defendant was not operating his motor vehicle safely. Id., at 1215. Based on this record, the court ruled that, because the officer **"did not rely solely on Weems' excessive speed in pulling him over, but upon the conditions of the roadway as well,"** the officer possessed probable cause to believe that Section 3361 had been violated within his primary jurisdiction, authorizing his hot pursuit of and extraterritorial arrest of Weems. Id., at 1213-1215 (emphasis added).

11

From the foregoing authority it is clear that excessive speed alone does not constitute probable cause to suspect a violation of Section 3361, and that the statute requires evidence of "conditions" or "actual and potential hazards then existing" on the roadway that render a motorist's speed "greater than is reasonable and prudent." Id., at 1213-14; 75 Pa.C.S.A. § 3361; see also Heberling, *supra* (finding that evidence that a driver traveled through an intersection on a hill crest at a high rate of speed is sufficient to support a conviction under Section 3361); Com. v. Strausser, 18 Pa. D. & C.4th 517 (Pa. Com. Pl., Northumberland County, January 18, 1993) (granting arrest of judgment of conviction under Section 3361 where the sole basis for the issuance of citation was defendant's speed of 41 miles per hour in a 25 mile per hour zone, where there was no evidence of "actual or potential hazards then existing").

Here, the evidence adduced at the suppression hearing amply established Defendant's excessive speed, including Officer Lindsay's testimony that he had to travel at high speeds, well in excess of the posted speed limits, to close in on Defendant's vehicle. However, with respect to evidence of then existing conditions on the roadway which rendered Defendant's speed unreasonable, the record is much less availing. On direct examination, when asked what observations Officer Lindsay made of the vehicle while still in his primary jurisdiction, he responded "[j]ust the – as I explained before, the driving – the erratic driving behavior, the speed." (N.T., at 22).

When asked what violations he believed had occurred within his primary jurisdiction, Officer Lindsay indicated "driving carelessly and driving his vehicle at a speed based on the conditions, you know, the evening conditions." (N.T., at 24). Further, there was no testimony indicating inclement weather, pedestrian crosswalks, heavy traffic, or other conditions then existing on the roadway within Bethlehem Township which rendered Defendant's speed

12

unreasonable. Rather, Officer Lindsay testified on direct examination that "there was surprisingly very low traffic, unusually low traffic" for a Saturday evening. (N.T., at 7).

Officer Lindsay testified that he observed Defendant's vehicle "jack-rabbitting" at red light intersections along Freemansburg Avenue in the proximity of St. Luke's Hospital, meaning that it accelerated heavily when a light turned green, but would come to a complete stop at the next red light. (N.T., at 21-22). While this would appear to provide slightly more compelling evidence of conditions within Bethlehem Township which would render Defendant's speed unreasonable, this is simply belied by the fact that Defendant's vehicle came to a complete stop at each red light, and lawfully proceeded upon green. There was no evidence indicating that Defendant's speed at these intersections caused his tires to squeal, cause his vehicle to fishtail or veer into another lane, or other indicia that his speed at that point was unreasonable. Faced with this set of facts, the Court fails to see how simply coming to a stop at a red light and accelerating quickly when it turns green establishes probable cause for a violation of Section 3361.

Although there was testimony and dash camera footage indicating that Officer Lindsay observed Defendant's vehicle travelling at an excessive rate of speed through a residential neighborhood, as well as making an illegal left turn through a steady red light, conduct which would certainly give rise to probable cause, the record reflects that this occurred in Palmer Township, outside of Officer Lindsay's jurisdiction. (N.T., at 25-26). Based on the record, the Court finds that while there may have existed probable cause for a violation of Section 3361 based on Defendant's conduct observed in Palmer Township, there is an insufficient basis in the record for the Court to conclude that Officer Lindsay possessed probable cause to believe

13

Defendant committed a violation of Section 3361 occurred within his primary jurisdiction of Bethlehem Township.[2]

### 2. 75 Pa.C.S.A. § 3714 (Careless Driving)

Section 3714 provides, in pertinent part, that "[a]ny person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense." 75 Pa.C.S.A. § 3714(a). Careless disregard for the safety of others under Section 3714 occurs where the defendant engages in "less than willful or wanton conduct but more than ordinary negligence or the mere absence of care under the circumstances." Com. v. Gezovich, 7 A.3d 300, 301 (Pa. Super. 2010) (internal citations omitted); see also Com. v. Karam, 2017 WL 4334207 (Pa. Super. 2017) (Non-Precedential Decision).

Invariably, probable cause for a violation of Section 3714 has been found to exist where an officer observes careless driving behavior beyond just the motorist's speed, which clearly demonstrates a disregard for the safety of persons or property. See, e.g., Com. v. Venable, 200 A.3d 490, 499 (Pa. Super. 2018) (probable cause existed to stop driver for suspected violation of Section 3714 where officer observed driver "spinning his tires," fishtailing into the opposing lane of traffic, and then accelerating very quickly); Com. v. Wilson, 111 A.3d 747, 755 (Pa. Super. 2015) (officer possessed probable cause to believe driver had violated Section 3714 where he observed driver swerve over the yellow lines and fog line multiple times); Com. v. Kelsey, 2017 WL 1437515 (Pa. Super. 2017) (Non-Precedential Decision) (probable cause existed to stop driver based on suspected violation of Section 3714, where officer observed the driver accelerate to avoid oncoming traffic while abruptly making a left turn, and heard the vehicle's tires screeching "while navigating a curve with a 25 mph speed limit").

---

[2] It is worth noting that Defendant ultimately did not receive a citation for a violation of Section 3361.

14

On cross-examination, the following exchange took place regarding Officer Lindsay's stated bases for pursuing and stopping Defendant's vehicle:

> Q. Now, you said that you stopped it -- and when Mr. Colquhoun asked you, you said you stopped it based on the conditions of the roadway at night. And then it was driving carelessly.
> Can you explain for His Honor and for the record how stopping at a red light and then going when it turns green is careless?
>
> A. Mr. Colquhoun indicated the behavior after Southmont Way was the careless behavior in that manner.
>
> Q. All right. Which was what?
>
> A. Driving a vehicle at a high rate of speed.

(N.T., at 40). The Commonwealth contends that Officer Lindsay possessed probable cause to stop Defendant's vehicle based on his observation of Defendant's vehicle passing another vehicle at a high rate of speed and in a carless manner, accelerating heavily when the traffic lights turned green on Freemansburg Avenue, and driving at an unsafe speed through a residential neighborhood in excess of twenty (20) miles per hour over the posted speed limit. Commonwealth's Brief in Opposition to Defendant's Motion to Suppress Evidence, at unnumbered pp.10-11. However, as discussed *supra*, Officer Lindsay's testimony and the dash camera footage indicate that, although Defendant was driving at a high rate of speed, causing Officer Lindsay to travel almost seventy (70) miles in pursuit of Defendant's vehicle, Officer Lindsay's observation of Defendant's excessive speed in a residential neighborhood occurred *after* he had exited Bethlehem Township and had turned left off of Freemansburg Avenue in Palmer Township. (N.T., at 24-26).

With regard to Officer Lindsay's observation of Defendant's passing another vehicle and accelerating rapidly when the traffic lights turned green, the record does not contain any indication as to what about these events rendered them careless, such that it demonstrated a

15

disregard for the safety of persons or property, other than the Defendant's speed alone. Officer Lindsay indicated that he was travelling just over sixty (60) miles per hour as he was closing in on Defendants vehicle, when he observed "the suspect vehicle pass the other vehicle, continuing eastbound." (N.T., at 17, 22-23). There is no indication in the record that Defendant crossed a yellow line or a fog line in making this pass, that he came close to striking another vehicle, or that he otherwise evidenced a disregard for the safety of other motorists or property. The record merely reflects that Officer Lindsay was travelling over sixty (60) miles per hour as he closed in on Defendant's vehicle, and from a distance he observed Defendant's vehicle pass another vehicle on Freemansburg Avenue.

While it is true that Officer Lindsay's observation of Defendant's excessive rate of speed while traveling through a residential neighborhood, as well as Defendant's unlawful left turn at a steady red light would provide a sufficient basis to stop Defendant's vehicle, the record indicates that these events were observed outside of the territorial boundaries of Officer Lindsay's primary jurisdiction. Based on the record before the Court, we must conclude that Officer Lindsay lacked probable cause to believe Defendant had committed a violation of Section 3714 within his primary jurisdiction.

## Conclusion

It is clear from the evidence of record, as well as the arguments of the Commonwealth, is that it was ultimately Defendant's excessive speed which formed that the thrust of Officer Lindsay's basis for pursuing Defendant's vehicle outside of his primary jurisdiction. (N.T., at 40); Commonwealth's Brief in Opposition to Defendant's Motion to Suppress Evidence, at unnumbered p.10. While operating a vehicle in excess of posted speed limits is also a violation of the Motor Vehicle Code which would provide a legally sufficient basis for a traffic stop,

16

Officer Lindsay testified that he was not using speed-timing devices, and there was no testimony indicating that Officer Lindsay had paced the Defendant's vehicle for the three-tenths of a mile under as required for probable cause to stop a vehicle for excessive speed by use of a speedometer. (N.T., at 8); see also 75 Pa.C.S.A. §§ 3362, 3368, 6308. Further, the testimony indicating that Defendant's conduct was at times "careless" [3] was not supported by evidence indicating how his conduct demonstrated "careless disregard for the safety of persons or property," as is required in order for a violation of Section 3714 to have occurred within Officer Lindsay's primary jurisdiction. 75 Pa.C.S.A. § 3714.

"The test set forth in 42 Pa.C.S. § 8953(a)(2) is not whether an officer has observed something that would merely raise his suspicions, but rather whether he has probable cause to believe that an offense has been committed within his primary jurisdiction." Com. v. McCandless, 648 A.2d 309, 311 (Pa. 1994). Because we conclude that Officer Lindsay lacked probable cause to believe that violations of Sections 3361 and/or 3714 occurred within his primary jurisdiction, it is clear that Section 8953 of the MPJA did not authorize his pursuit of Defendant beyond the territorial limits of Bethlehem Township, and Defendant's eventual arrest in Palmer Township was therefore unlawful. Accordingly, all evidence resulting from Officer Lindsay's pursuit in to Palmer Township, including Defendant's unlawful arrest, must be suppressed. See Com. v. Hlubin, 208 A.3d 1032, 1050 (Pa. 2019) ("in cases decided since McCandless, this Court has consistently held that when individuals engage in criminal law

---

[3]     Our Supreme Court has made clear that, for an independent assessment of whether an officer possessed reasonable suspicion or probable cause of a Motor Vehicle Code violation, more is required than testimony that simply repeats statutory language when describing the conduct of the defendant. Com. v. Holmes, 14 A.3d 89, 97 (Pa. 2011)

17

enforcement activities without any statutory authority to do so, **evidentiary suppression is the remedy for any and all breaches.**") (emphasis added).

BY THE COURT:

CRAIG A. DALLY,                                J.